UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MANUEL TIJERINO                                    CIVIL ACTION

VERSUS                                             NO. 23-7391

GREGORY J. MILLER, *et al.*                        SECTION M (4)

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants Gregory J. Miller and Gregory J. Miller Attorney at Law L.L.C. (together, "Miller")[1] and a motion to deny or defer summary judgment pursuant to Federal Rule of Civil Procedure 56(d) filed by plaintiff Manuel Tijerino.[2]  Miller responds in opposition to Tijerino's Rule 56(d) motion,[3] and Tijerino replies in further support of his motion.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants Miller's motion for summary judgment and denies Tijerino's Rule 56(d) motion.

## I.    BACKGROUND

This legal-malpractice case arises out of Miller's representation of Tijerino in an unsuccessful suit against his former employer, Administrators of the Tulane Educational Fund ("Tulane").[5]  Tulane terminated Tijerino from his position as a programmer on May 6, 2021.[6]  Tijerino had been working at Tulane since August of 2017.[7]  Although his position was an in-office position requiring him to report to the National Primate Research Center located in

---

[1] R. Doc. 54.
[2] R. Doc. 57.
[3] R. Doc. 60.
[4] R. Doc. 62.
[5] *Tijerino v. Administrators of the Tulane Educational Fund*, No. 21-907 (E.D. La.), R. Doc. 1.
[6] R. Doc. 3 at 1.
[7] E.D. La. No. 21-907, R. Docs. 28-1 at 1; 35 at 2; 40 at 1.

Covington, Louisiana, Tijerino was permitted to work remotely for the first seven months to facilitate his relocation from Iowa to Louisiana.[8]  After Tijerino moved to Louisiana in March of 2018, his wife and children returned to Iowa to sell their home there.[9]  While in Iowa, Tijerino's wife learned she was pregnant and decided that she and her children would stay in Iowa permanently.[10]  On January 14, 2019, Tijerino met with his supervisor, Bram Sanchez, to discuss his situation.[11]  He told Sanchez that his wife was pregnant and requested to work remotely part-time so that he could travel to Iowa every week to help her.[12]  Tijerino was approved to work remotely on certain pre-approved Thursdays and Fridays.[13]

In February 2019, Tijerino used his Tulane-issued travel and entertainment card ("T&E Card")[14] as collateral to rent a U-Haul trailer for personal use.[15]  According to Tijerino, U-Haul was not supposed to charge the T&E Card, but it did.[16]  When Tulane discovered the $919.91 charge, it reported it as fraud to the card issuer, J.P. Morgan, which credited $919.91 back to the T&E Card.[17]  Tijerino also disputed the charge with U-Haul, and U-Haul issued a refund for the same amount, resulting in a positive balance of $919.91 on the T&E Card.[18]  Upon learning that U-Haul had refunded the charge, J.P. Morgan withdrew its own $919.91 credit.[19]  However, Tijerino believed he was entitled to retain the $919.91 balance under federal consumer protection laws and continued to use the T&E Card "like a gift card" on personal expenses totaling $840.41.[20]

---

[8] E.D. La. No. 21-907, R. Docs. 28-1 at 2; 35 at 2.
[9] E.D. La. No. 21-907, R. Docs. 28-1 at 2; 35 at 2; 40 at 1.
[10] E.D. La. No. 21-907, R. Docs. 28-1 at 2; 35 at 2; 40 at 1.
[11] E.D. La. No. 21-907, R. Docs. 28-1 at 3; 35 at 2; 40 at 1.
[12] E.D. La. No. 21-907, R. Docs. 28-1 at 3; 35 at 2; 40 at 1.
[13] E.D. La. No. 21-907, R. Docs. 28-1 at 3; 35 at 2; 40 at 2.
[14] T&E Cards are "issued to employees to charge certain work-related travel and entertainment expenses directly to Tulane," and are not permitted to be used for personal expenses.  E.D. La. No. 21-907, R. Doc. 28-1 at 4.
[15] Id.; E.D. La. No. 21-907, R. Docs. 35 at 5-6; 40 at 5.
[16] E.D. La. No. 21-907, R. Docs. 28-1 at 4; 35 at 6; 40 at 5.
[17] E.D. La. No. 21-907, R. Docs. 28-1 at 4; 40 at 5.
[18] E.D. La. No. 21-907, R. Docs. 28-1 at 4; 35 at 6; 40 at 5-6.
[19] E.D. La. No. 21-907, R. Docs. 28-1 at 4; 35 at 6; 40 at 6.
[20] E.D. La. No. 21-907, R. Docs. 28-1 at 4-5; 35 at 6; 40 at 6.

On April 9, 2019, Tulane's assistant controller, Jason Catt, emailed Tijerino instructing him to reimburse Tulane for the personal charges in the amount of $840.41 by April 15, 2019.[21] Tijerino failed to do so, and Sanchez followed up with him via email on April 24, 2019.[22] Tijerino told Sanchez that he was "not paying [Catt] 1 cent" because, in his view, Catt had "interfered with [his] chargeback."[23] The situation was referred to Tulane's internal audit department and, on April 29, 2019, a Tulane human resources business partner emailed Sanchez confirming that Tijerino had violated Tulane's T&E Card policy and recommending that he be terminated.[24] Sanchez was attending a conference out of town when he received this email and did not respond immediately.[25]

The next day, April 30, 2019, Tijerino failed to report to work in Covington and instead spent the day driving to Iowa. He emailed Sanchez, stating:

> It was only a matter of time before I had to go to Iowa and I couldn't wait until the day of delivery because wife always has baby early and she can[']t go to grocery anymore and needs help.
>
> So I am driving to Iowa and will be working remote. I have fiber internet at home, and will be just like if I was in office.
>
> Thanks for the opportunity to work remote.[26]

However, Tijerino had not taken April 30 off or obtained permission to work remotely full-time.[27] When Sanchez returned from his trip on May 6, 2019, he called Tijerino and informed him that his employment was terminated for violating the T&E Card policy and failing to report to work.[28]

On May, 6, 2021, Tijerino filed a lawsuit against Tulane, asserting that it failed to notify him of his rights under the Family and Medical Leave Act ("FMLA") after the January 14 meeting

---

[21] E.D. La. No. 21-907, R. Docs. 28-1 at 5; 40 at 6.
[22] E.D. La. No. 21-907, R. Docs. 28-1 at 5; 40 at 6.
[23] E.D. La. No. 21-907, R. Docs. 28-1 at 5; 28-2 at 105; 40 at 6.
[24] E.D. La. No. 21-907, R. Docs. 28-1 at 6; 40 at 6.
[25] E.D. La. No. 21-907, R. Doc. 28-1 at 6.
[26] E.D. La. No. 21-907, R. Doc. 28-2 at 108.
[27] E.D. La. No. 21-907, R. Doc. 40 at 7.
[28] E.D. La. No. 21-907, R. Docs. 28-1 at 7; 35 at 5; 40 at 6.

and retaliated against him for trying to exercise his FMLA rights.[29]  Tulane filed a motion for summary judgment, arguing that Tijerino's FMLA-notice claims were time-barred and, as to the retaliation claim, that Tijerino was terminated for violating the T&E Card policy and unilaterally deciding to work remotely from Iowa without approval, not in retaliation for requesting FMLA leave, which Tulane denied Tijerino had ever requested.[30]  After obtaining a deadline extension from the court,[31] Miller filed an opposition to the motion for summary judgment.[32]  The court granted summary judgment in Tulane's favor on December 5, 2022, holding that Tijerino's FMLA-notice claims were time-barred, he could not establish a *prima facie* case of retaliation because he never attempted to use FMLA leave – he only requested to work remotely, which is not protected under the FMLA – and, even if he could establish a *prima facie* case of retaliation, he could not show that Tulane's legitimate, nondiscriminatory reasons for terminating him (violation of the T&E Card policy and failure to report to work without requesting leave) were pretextual.[33]  The court entered judgment dismissing Tijerino's claims against Tulane on December 6, 2022.[34]

That same day, Miller informed Tijerino that summary judgment was granted and his claims were dismissed, but that he had "a couple of options," presumably including a motion to alter or amend judgment under Federal Rule of Civil Procedure 59.[35]  Thereafter, Tijerino paid Miller a retainer to draft a Rule 59 motion, which Miller indicated he would work on after the holidays.[36]  However, due to a calendaring error, Miller failed to file a Rule 59 motion within 28

---

[29] E.D. La. No. 21-907, R. Doc. 1.
[30] E.D. La. No. 21-907, R. Docs. 28; 28-1.
[31] E.D. La. No. 21-907, R. Docs. 31; 34.
[32] E.D. La. No. 21-907, R. Doc. 35.
[33] E.D. La. No. 21-907, R. Doc. 40.
[34] E.D. La. No. 21-907, R. Doc. 41.
[35] R. Doc. 54-3.
[36] R. Doc. 1 at 3.

days of entry of the court's judgment. He admitted this mistake to Tijerino on January 31, 2023, and refunded Tijerino's retainer.[37] On October 30, 2023, Tijerino, appearing *pro se*, filed a "motion for leave to amend complaint pursuant to Rule 60,"[38] which the court interpreted as a motion for relief from final judgment under Rule 60 and denied.[39] Miller appealed the denial of his Rule 60 motion to the Fifth Circuit,[40] which affirmed the district court's ruling. *Tijerino v. Adm'rs of Tulane Educ. Fund*, 2024 WL 4039750, at *1 (5th Cir. Sept. 4, 2024).

In the meantime, Tijerino filed the instant suit against Miller on December 23, 2023, asserting claims for legal malpractice, breach of fiduciary duty, and misrepresentation.[41] Tijerino's complaint alleges that Miller did not conduct adequate discovery, failed to raise certain facts and arguments in the underlying litigation, failed to timely file a response to Tulane's motion for summary judgment and a Rule 59 motion, and charged Tijerino "excessive legal fees" for work that he failed to perform.[42] Miller now moves for summary judgment on these claims.[43]

## II.  PENDING MOTIONS

In his motion, Miller argues that he is entitled to summary judgment because Tijerino's claims lack merit, and all but one are perempted.[44] Miller asserts that he promptly informed Tijerino that his FMLA claims were dismissed on December 6, 2022 (the same day judgment was entered) and argues that, because Tijerino filed this suit on December 23, 2023, over a year after he learned that his claims had been dismissed, his malpractice claims regarding his representation prior to the dismissal are perempted.[45] Miller therefore argues that Tijerino's only surviving

---

[37] R. Docs. 1-1; 54-4; 54-5.
[38] E.D. La. No. 21-907, R. Doc. 44.
[39] E.D. La. No. 21-907, R. Doc. 47.
[40] E.D. La. No. 21-907, R. Doc. 48.
[41] R. Doc. 3.
[42] *Id.*
[43] R. Doc. 54.
[44] R. Doc. 54-1 at 2.
[45] *Id.* at 2-3.

malpractice claim is that Miller failed to file a timely motion to alter or amend judgment under Rule 59.[46] Miller admits this mistake but argues that Tijerino cannot prevail on this claim because he has not come forward with summary-judgment evidence establishing that a Rule 59 motion would have been granted had Miller filed one on time.[47]

Tijerino does not respond to Miller's motion for summary judgment *per se*, but instead moves to deny or defer summary judgment under Rule 56(d).[48] Tijerino argues that summary judgment is premature because Miller has not responded to his interrogatories and requests for production of documents, Miller's responses to his requests for admission are not yet due, and, pursuant to the Court's scheduling order, the discovery deadline is July 15, 2025, and dispositive motions are not due until June 12, 2025.[49] Tijerino contends that his "outstanding discovery requests seek critical information necessary to rebut" the arguments in Miller's motion for summary judgment, including communications regarding his representation by Miller and Miller's failure to file a Rule 59 motion; "[r]ecords related to [Tijerino's] FMLA claims, [Tulane's alleged] consumer protection violations, and Tulane's internal decision-making process regarding [Tijerino's] termination"; and documents and admissions "regarding external influences that impacted his legal representation" by Miller.[50]

In opposition to Tijerino's Rule 56(d) motion, Miller argues that "Tijerino only makes vague assertions that discovery will be productive" and can establish no need for discovery related to time-barred claims.[51] As to the specific information and documents Tijerino identifies in his Rule 56(d) motion, Miller first argues that he has already provided all relevant communications

---

[46] *Id.* at 3.
[47] *Id.* at 3-8.
[48] R. Doc. 57.
[49] *Id.* at 2-3.
[50] *Id.* at 3.
[51] R. Doc. 60 at 3.

regarding his representation of Tijerino, and that information regarding his failure to timely file a Rule 59 motion is unnecessary given that he has admitted that he failed to file the motion on time.[52] Miller then argues that "there are no records regarding consumer violation protections as no consumer protection violation occurred," and that he "is not privy to Tulane's internal decision-making as he has no affiliation with Tulane."[53]  Miller also argues that Tijerino's request for information related to "external influences" is "inexplicable and wholly frivolous" and unrelated to any claims raised in Tijerino's complaint.[54]  Lastly, Miller reiterates his argument that Tijerino's claim that a Rule 59 motion to alter or amend the court's judgment dismissing his FMLA claims would have been granted "is too speculative."[55]

In his reply, Tijerino addresses Miller's peremption argument by asserting that he "only discovered the full extent of Mr. Miller's omissions – including failure to file a Rule 59 motion, failure to rebut legal presumptions, and failure to argue key consumer protection and FMLA issues – after taking over his case pro se," which he says was "clearly" within one year of filing this lawsuit.[56]  Tijerino again lists his outstanding discovery requests, the information he seeks to obtain through them, and the arguments that he contends Miller negligently failed to raise in the underlying FMLA litigation.[57]

## III.  LAW & ANALYSIS

### A.  Motion for Summary Judgment

#### 1.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and

---

[52] *Id.*
[53] *Id.* at 3-4.
[54] *Id.* at 4.
[55] *Id.*
[56] R. Doc. 62 at 2.
[57] *Id.* at 2-4.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the

8

evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Analysis

#### a. Peremption

Before reaching the merits of Tijerino's malpractice claims, the Court must address whether they are perempted. Peremption is a period of time fixed by law for the existence of a right, and it may not be renounced, interrupted, or suspended. *L. Enf't Dist. of Jefferson Par. v. Mapp Constr., LLC*, 296 So. 3d 1260, 1263 (La. App. 2020) (citing La. Civ. Code arts. 3458, 3461). "Unless timely exercised, the right is extinguished upon the expiration of the peremptive

9

period." *Id.* (citing La. Civ. Code art. 3458).  Because peremptive statutes are strictly construed

against peremption and in favor of the claim, when there is more than one possible construction,

"the one that maintains enforcement of the claim or action, rather than the one that bars

enforcement should be adopted." *Id.* (citing *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1083

(La. 2009)).  Legal malpractice claims are subject to the peremptive periods set out in La. R.S.

9:5605, which states in pertinent part:

> A.  No action for damages against any attorney at law duly admitted to practice in
>     this state, any partnership of such attorneys at law, or any professional
>     corporation, company, organization, association, enterprise, or other
>     commercial business or professional combination authorized by the laws of this
>     state to engage in the practice of law, whether based upon tort, or breach of
>     contract, or otherwise, arising out of an engagement to provide legal services
>     shall be brought unless filed in a court of competent jurisdiction and proper
>     venue *within one year from the date of the alleged act, omission, or neglect, or
>     within one year from the date that the alleged act, omission, or neglect is
>     discovered or should have been discovered*; however, even as to actions filed
>     within one year from the date of such discovery, in all events such actions shall
>     be filed at the latest within three years from the date of the alleged act, omission,
>     or neglect.
>
> . . . .
>
> E.  The peremptive period provided in Subsection A of this Section shall not apply
>     in cases of fraud, as defined in Civil Code Article 1953.

La. R.S. 9:5605 (emphasis added).[58]  As is clear from the language of § 5605, "a [peremptive]

period will begin to run even if the injured party does not have actual knowledge of facts that

would entitle him to bring a suit as long as there is constructive knowledge of same." *Jenkins v.

Starns*, 85 So. 3d 612, 620 (La. 2012).  "Constructive knowledge is whatever notice is enough to

excite attention and put the injured party on guard and call for inquiry.  Such notice is tantamount

to knowledge or notice of everything to which a reasonable inquiry may lead." *Id.*  Therefore, for

purposes of determining when the peremptive period began, "the date of discovery is the date the

---

[58] The fraud exception of § 5605(E) is not applicable here as Tijerino does not allege that Miller fraudulently concealed his alleged malpractice.

negligence was discovered or should have been discovered by a reasonable person in the plaintiff's position." *Id.* at 621.

Miller argues that the "date of discovery" for all of Tijerino's malpractice claims other than his failure to file a Rule 59 motion was December 6, 2022, when Miller informed Tijerino that his FMLA claims had been dismissed.[59]   Accordingly, Miller argues that the peremptive period for these malpractice claims expired on December 6, 2023, before the complaint in this case was filed. While Tijerino claims that he "only discovered the full extent" of the alleged malpractice "after taking over his case pro se,"[60] he does not argue that he was impeded from discovering the "full extent" of these omissions before then.   Moreover, a client does not need to comprehend the "full extent" of his attorney's malpractice for peremption to run.   The peremptive period began as soon as Tijerino had sufficient notice "to excite [his] attention and put [him] on guard and call for inquiry." *Id.* at 620.

The "date of discovery" concerning Tijerino's deposition-related allegations of malpractice – namely, that Miller failed to adequately prepare Tijerino for his deposition and failed to provide a full copy of his deposition transcript – was before December 6, 2022, because these acts or omission were immediately discoverable to Tijerino, as he personally participated in the deposition and requested the transcript.   And Miller's omission of certain facts or legal arguments from the opposition to Tulane's motion for summary judgment would have been discoverable by simply reading the opposition.   Even if Tijerino did not read the opposition, he had constructive knowledge of its contents as of November 22, 2022, when Miller filed it into the case record on his behalf. *See CFP New Orleans, LLC v. Orleans Par. Jud. Dist. Ct. Bldg. Comm'n*, 2017 WL 3917108, at *4 (E.D. La. Sept. 7, 2017) ("The knowledge of an attorney is imputed to his client."

---

[59] R. Doc. 54-1.
[60] R. Doc. 62 at 2.

(citing *Stevision v. Charles St. Dizier, Ltd.*, 9 So. 3d 978 (La. App. 2009)).  Therefore, Tijerino

likely had sufficiently knowledge to trigger the peremption period well before December 6, 2022.

*See Coté v. Hiller*, 162 So. 3d 608, 615 (La. App. 2015) (finding that the attorney's alleged failure

to conduct proper discovery, mishandling of a summary-judgment opposition, and failure to raise

evidentiary issues at trial put the plaintiff on notice of potential malpractice).  However, at the very

latest, Tijerino had sufficient notice of the alleged malpractice to trigger the peremptive period on

December 6, 2022, when he learned that summary judgment had been granted in Tulane's favor

and that his claims were dismissed, especially in light of the preceding alleged breaches.  *See*

*Beach v. Cont'l Cas. Co.*, 11 So. 3d 715, 719 (La. App. 2009) ("An adverse ruling by a court is a

fact which would put a reasonable man on notice that malpractice may have been committed.")

(collecting cases).  But Tijerino did not file this malpractice suit until December 23, 2023, over a

year after he learned that his FMLA claims had been dismissed.  Thus, Tijerino's malpractice

claims arising out of the discovery and summary-judgment phases of his FMLA litigation are

perempted.

  The Court therefore agrees with Miller that the only allegation that is not time-barred is

Miller's failure to timely file a Rule 59 motion.  The deadline to file a Rule 59 motion was January

3, 2023, 28 days after entry of the judgment on December 6, 2022.  Fed. R. Civ. P. 59(e).  Miller

informed Tijerino of this error on January 31, 2023.  Tijerino filed this action on December 23,

2023, within one year of both the lapsing of the deadline and his learning of same.

  **b.  Failure to file Rule 59 Motion**

  "A legal malpractice claim in Louisiana, as in other states, is a negligence claim, albeit a

professional negligence claim.  Thus, in order to recover, the plaintiff must establish all the

elements of negligence: duty, breach, cause in fact, legal cause or scope of duty, and damages."

21 Frank L. Maraist et al., Louisiana Civil Law Treatise: Louisiana Lawyering § 18.1 (2024). An attorney is not required to exercise perfect judgment at all times, *Guilbeau Marine, Inc. v. Ledet*, 375 So. 3d 977, 985-86 (La. App. 2023) (quoting *Belanger v. Spencer H. Calahan, L.L.C*, 324 So. 3d 152, 159 (La. App. 2021)), *writ denied*, 375 So. 3d 411 (La. 2023), but must "'exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality.'" *Id.* at 986 (quoting *MB Indus., LLC v. CNA Ins. Co.*, 74 So. 3d 1173, 1184 (La. 2011). Miller admits that he failed to timely file the Rule 59(e) motion.[61] But a showing of negligence alone is insufficient to survive summary judgment. *MB Indus.*, 74 So. 3d at 1184. "At the very least, [the plaintiff] must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation." *Id.* at 1187. Speculative theories of causation are not enough. *Colonial Freight Sys., Inc. v. Adams & Reese, L.L.P.*, 524 F. App'x 142, 144 (5th Cir. 2013). Therefore, for Tijerino's only remaining allegation to survive summary judgment, there must be a material issue of fact as to whether a timely Rule 59 motion would have been granted in his favor, *i.e.,* whether it would have prevented the ultimate outcome of the litigation of his FMLA claims. Miller argues that Tijerino cannot establish this causal link because he "cannot present any reasonable basis or material issue of fact to conclude that Judge Milazzo would have granted" relief had Miller timely filed a Rule 59 motion.[62]

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Under the rule, a movant must show that relief is necessary for at least one of the following reasons: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to consider newly discovered or previously

---

[61] R. Doc. 60 at 4 ("Miller admitted that he did not timely calendar the Rule 59 Motion. … [T]his is not disputed.").
[62] R. Doc. 54-1 at 6.

unavailable evidence; (3) to prevent manifest injustice; or (4) to address an intervening change in the controlling law. *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (5th Cir. 2012); *Barber v. Spinal Elements*, 2019 WL 5810304, at *2 (E.D. La. Nov. 7, 2019). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)); *see also In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001) ("A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction."). In deciding the outcome of a Rule 59(e) motion, the court must balance "two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). And while a district court has considerable discretion to grant or deny a Rule 59(e) motion, the grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004).

Tijerino does not assert that his Rule 59 motion would have argued that the court's judgment dismissing his FMLA claims was based on a manifest error of law or fact, that he had discovered new or previously unavailable evidence, or that there was an intervening change in the controlling law. *Markel*, 674 F.3d at 32. In his complaint, Tijerino asserts that "[a] diligently pursued Rule 59 motion could have served as a mechanism to rectify the adverse effects of the missed deadline and provided [him] with an opportunity to present [his] case more comprehensively and justly" and Miller's failure to timely file such a motion "denie[d Tijerino] a

rightful opportunity to address and rectify the consequences arising from the missed deadline in a manner consistent with established legal procedures."[63]  To the extent Tijerino asserts that a Rule 59 motion would have been granted to avoid "manifest injustice" resulting from Miller's failure to timely and adequately oppose Tulane's motion for summary judgment, these alleged failures by Miller are not proper bases for a Rule 59 motion.

As an initial matter, Tijerino's repeated allegation that Miller "missed [the] deadline"[64] to file an opposition to Tulane's motion for summary judgment is erroneous.  On November 8, 2022, the day a response to the motion for summary judgment was due,[65] Miller filed a motion to extend the response deadline,[66] which the court granted.[67]  Miller then filed an opposition on the new response deadline.[68]  Thus, the opposition was timely and was considered by the court.[69]  Tijerino's second basis for a Rule 59 motion belies a misunderstanding of the purposes of Rule 59.  Tijerino asserts that a Rule 59 motion would have raised certain arguments which "would have created substantial questions of fact."[70]  But the Supreme Court and Fifth Circuit have both expressly rejected the use of Rule 59 motions "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon*, 554 U.S. at 485 n.5 (quotation omitted), or "relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *In re Self*, 172 F. Supp. 2d at 816.  Therefore,

---

[63] R. Doc. 3 at 4.

[64] *Id.*

[65] The motion for summary judgment was initially set for submission on November 16, 2022, *see* E.D. La. No. 21-907, R. Doc. 28, making the response deadline November 8, 2022, eight days prior to the submission deadline, per Local Rule 7.5.

[66] E.D. La. No. 21-907, R. Doc. 31.

[67] E.D. La. No. 21-907, R. Doc. 34 (resetting submission date of motion for summary judgment to November 30, 2022).

[68] E.D. La. No. 21-907, R. Doc. 35.  The new response deadline was November 22, 2022 (eight days prior to the new submission date of November 30, 2022), the day the opposition was filed.

[69] Of course, if Tijerino is instead arguing that the opposition was itself plagued with malpractice, that claim is perempted as explained above.  *See supra* § III(A)(2)(a).

[70] R. Doc. 62 at 4 (emphasis omitted).

Tijerino could not have used a Rule 59 motion as a vehicle to raise additional arguments in opposition to Tulane's motion for summary judgment as these arguments were or could have been raised prior to the entry of judgment. Because Tijerino has failed to assert a legitimate basis for a Rule 59 motion, he has not raised an issue of material fact tending to show that a Rule 59 motion would have changed the outcome of the litigation. Consequently, Miller is entitled to judgment as a matter of law.

### B. Rule 56(d) Motion

Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). As the Fifth Circuit has explained, the nonmovant must "show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (quotation omitted). "[V]ague assertions that additional discovery will produce needed, but unspecified, facts" are insufficient. *Id.* (quotation omitted). Instead, the nonmovant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quotation omitted).

Tijerino did not attach the required affidavit or declaration. While the Court applies less stringent standards to *pro se* parties, "'the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) (alteration omitted) (quoting *Hulsey v. Texas,* 929 F.2d 168, 171 (5th Cir. 1991)). However, regardless of this procedural defect, Tijerino's motion

fails to assert why he needs additional discovery and how that discovery will create a genuine issue of material fact. *See January*, 74 F.4th at 651. He only argues that the "critical information" he seeks to obtain through discovery is "necessary to rebut [Miller's] [m]otion for [s]ummary [j]udgment."[71] This vague assertion that additional discovery will produce needed, but unspecified, facts is insufficient. *Id.* While Tijerino attempts to further explain his asserted need for discovery in his reply brief to Miller's opposition to his Rule 56(d) motion,[72] the effort falls short. Courts generally do not consider arguments raised for the first time in a reply brief, *Farwell v. Rushing*, 2024 WL 4708917, at *1 (5th Cir. Nov. 7, 2024), and, in any event, the points he claims discovery would support are either perempted[73] or not a proper basis for a Rule 59 motion.[74] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999). Thus, because the requested discovery would not raise a genuine issue of material fact tending to show that a Rule 59 motion, if filed, would have altered the outcome of the underlying case, Tijerino's Rule 56(d) motion is properly denied and summary judgment on his malpractice claims against Miller is appropriate at this time.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Miller's motion for summary judgment (R. Doc. 54) is GRANTED and Tijerino's motion to deny or defer summary judgment (R. Doc. 57) is DENIED.

---

[71] R. Doc. 57 at 2.
[72] R. Doc. 62 at 3-4.
[73] *See supra* § III(A)(2)(a).
[74] *See supra* § III(A)(2)(b).

17

New Orleans, Louisiana, this 14th day of April, 2025.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE